## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON DIVISION

| | |
|---|---|
| **JAMES BAILEY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **Civil Action No. 2:08-1204** |
| ) | |
| **JAMES RUBENSTEIN, Commissioner** ) | |
| **West Virginia Division of Corrections,** ) | |
| ) | |
| **Defendant.** ) | |

### PROPOSED FINDINGS AND RECOMMENDATION

On October 21, 2008, Plaintiff, an inmate at Mount Olive Correctional Complex [MOCC], filed a Motion for Injunctive Relief. (Document No. 1.)[1] Citing 42 U.S.C. § 1983, Plaintiff alleges that "prison officials impeded his constitutional right to practice his individualized Native American religion. Plaintiff also claims that his rights under the Religious Land Use and Institutionalized Persons Act (RLUIPA) were violated by Defendant."[2] Specifically, Plaintiff indicates that under his Native American religious beliefs, he must abide by certain dietary and pharmaceutical restrictions.

---

[1] Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer and therefore, they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

[2] RLUIPA may be found at 42 U.S.C. §§ 2000cc- 2000cc-5. Plaintiff also cites *Cutter v. Wilkinson*, 544 U.S. 709, 125 S.Ct. 2113, 161 L.Ed.2d 1020 (2005). In *Cutter*, Plaintiffs, members of non-traditional religions, claimed that Defendants, prison officials, violated their rights under [RLUIPA], 42 U.S.C. § 2000cc-1, by retaliating and discriminating against them on the basis of their religious beliefs, forbidding them to abide by dress and appearance mandates of their religions, denying them access to religious literature and opportunities for group worship, withholding religious ceremonial items, and failing to provide a chaplain trained in their faith. Defendants moved to dismiss Plaintiffs' actions, and the District Court denied their motions. The Sixth Circuit Court of Appeals reversed, however, holding that the portion of RLUIPA applicable to institutionalized persons violated the Establishment Clause of the First Amendment. Finding RLUIPA's institutionalized persons provision compatible with the Establishment Clause, the United States Supreme Court reversed the Sixth Circuit's decision.

Plaintiff further claims that "traditional Native American religious practice includes the ritualistic burning and smoking of tobacco." Plaintiff indicates that a smoking ban has been imposed at MOCC which has impacted his practice of his Native American religion.[3] Plaintiff attaches to his Motion a copy of the September 1, 2008, Attachment #2 to the West Virginia Division of Corrections' June 13, 2008, Operational Procedure #5.08 indicating allowances and restrictions upon the practice of the Native American religion at MOCC including the use of tobacco. Attachment #2 states as follows respecting tobacco use in Native American religious ceremonies:

> MOCC has a compelling governmental interest to control the introduction of contraband, to include tobacco products, into the inmate population. Further, MOCC must consider the costs associated with the use of Staff/Officers, space availability, and time factors in the administration of any program, religious or otherwise. With the documented cases of tobacco stored from the tobacco stored in the Chapel and used in the Native American prayer ceremonies being found in the possession of inmates on the yard, and the case of tobacco orders missing, this procedure is the least restrictive alternative available instead of banning the use of tobacco all-together. This does not pose a substantial burden on the exercise of the Native American Religion since provision is being made time and other means are available to practice that belief.

According to Attachment #2, inmates practicing the Native American religion at MOCC may use a blend or mixture containing red willow bark and/or herbs and, in any event, no more than 25% tobacco during prayer services. The chapel makes up and keeps the blend or mixture and dispenses it during Native American religious services. Attachment #2 also states that "[t]he Chapel will attempt to provide an opportunity for Native American Prayer Service once a week. Services will be cancelled if adequate Security personnel are not available."

> Plaintiff requests that the District Court
>
> reverse the Commissioner's decision to take tobacco products out of the Division of

---

[3] The Division of Corrections ban on inmate smoking went into effect at MOCC on March 1, 2008.

> Correctional Jails which has made a burden on the Native American Religion. * * * The staff here at Mt. Olive Correctional Complex has placed a burden on the Native American Religion, to have Prayer service only one time a month. The Native Americans would like to smoke with Prayer service every day. The staff here at Mt. Olive Correctional Complex has put the Native American Indian service at a burden of being harassed by 8 - 10 guards to strip search and steadily interfering with the measuring the tobacco and steadily interfering with the service by measuring the tobacco and time what brand of tobacco to smoke. The guideline that has been put on the Native American Indians has caused the congregation to drop from approximately 200 to 100. We would like for the Court to lift the smoking ban in all facilities in West Virginia that has caused all the burden, until the Court resolves this issue.

Plaintiff has neither paid the filing fee as required under 28 U.S.C. § 1914(a) nor filed an Application to Proceed Without the Prepayment of Fees and Costs.

## **THE STANDARD**

Pursuant to 28 U.S.C. § 1915A, the Court is required to screen each case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. On screening, the Court must recommend dismissal of the case if the complaint is frivolous, malicious or fails to state a claim upon which relief can be granted. A "frivolous" complaint is one which is based upon an indisputably meritless legal theory. Denton v. Hernandez, 504 U.S. 25, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992). A "frivolous" claim lacks "an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325, 109 S.Ct. 1827, 1831 - 32, 104 L.Ed.2d 338 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." Id., 490 U.S. at 327, 109 S.Ct. at 1833. A claim lacks an arguable basis in fact when it describes "fantastic or delusional scenarios." Id., 490 U.S. at 327 - 328, 109 S.Ct. at 1833. In screening qualifying cases under 28 U.S.C. § 1915A to determine whether they state claims for which relief can be granted, the undersigned is mindful of the United States Supreme Court's statement in Bell Atlantic Corporation v. Twombly, __U.S. __, 127 S.Ct. 1955, 1964 - 1965, 167 L.Ed.2d 929 (2007)(Citations omitted)

as follows:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, * * * a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, see Papasan v. Allain, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)(on a motion to dismiss, courts 'are not bound to accept as true a legal conclusion couched as a factual allegations.'). Factual allegations must be enough to raise a right to relief above the speculative level * * * on the assumption that all allegations in the complaint are true (even if doubtful in fact) * * *.

The undersigned is further mindful that where a *pro se* Complaint can be remedied by an amendment, the District Court may not dismiss the Complaint, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992).

## DISCUSSION

Plaintiff is seeking injunctive relief under RLUIPA and the Free Exercise Clause of the First Amendment. In considering whether to issue an injunction, the District Court must balance the hardships likely to befall the parties if the injunction is, or is not, granted. Blackwelder Furniture Co. v. Seilig Mfg. Co., 550 F.2d 189, 196 (4th Cir. 1977). Proper balancing of the hardships requires the District Court to weigh the relative importance of four factors:

(1) the likelihood of irreparable harm to the plaintiff if the preliminary injunction is denied;
(2) the likelihood of harm to the defendant if the requested relief is granted;
(3) the likelihood that the plaintiff will succeed on the merits; and
(4) the public interest.

Manning v. Hunt, 119 F.3d 254, 263 (4th Cir. 1997)(quoting Rum Creek Coal Sales, Inc., v. Caperton, 926 F.2d 353, 359 (4th Cir. 1991)). Consideration of the first two factors is the first step in the analysis. Blackwelder, 550 F.2d at 196. If the District Court concludes that the balance of the potential hardships favors the Plaintiff, then "it is enough that grave or serious questions are presented; and plaintiff need not show a likelihood of success." Id. When injunctive or prospective

relief is requested in the context of allegations that prison conditions violate constitutional rights, 18 U.S.C. § 3626 requires that the District Court focus its attention on additional factors in assessing whether such relief is appropriate and, if so, ordering it. Title 18, U.S.C. § 3626(a)(1)(A) states when prospective relief is appropriate with respect to prison conditions as follows:

> Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The Court shall not grant or approve any prospective relief unless the court finds that such is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.

### A. Plaintiff's RLUIPA Claim.

42 U.S.C. § 2000cc-1 provides as follows:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person –
> (1) is in furtherance of a compelling governmental interest; and
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-2(b) provides:

> If a plaintiff produces prima facie evidence to support a claim alleging a violation of the Free Exercise Clause or a violation of 2000cc of this title, the government shall bear the burden of persuasion on any element of the claim, except that the plaintiff shall bear the burden of persuasion on whether the law (including a regulation) or government practice that is challenged by the claim substantially burdens the plaintiff's exercise of religion.

Thus, Plaintiff in the instant case has the initial burden of demonstrating that the Division of Corrections' and MOCC's policies have substantially burdened his religious activities. In Lovelace v. Lee, 472 F.3d 174, 187 (4th Cir. 2006), the Fourth Circuit Court of Appeals adopted the definition of "substantial burden" announced by the United States Supreme Court in the Free Exercise Clause

context in Thomas v. Review Bd. Of Ind. Employment Sec. Div., 450 U.S. 707, 718, 101 S.Ct. 1425, 67 L.Ed.2d 624 (1981), stating that "a substantial burden on religious exercise occurs when a state or local government, through act or omission, 'put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" If Plaintiff is found to have demonstrated that the Division of Corrections' and MOCC's policies have substantially burdened his religious activities, the Defendant then must prove that the policies are in furtherance of a compelling governmental interest and are the least restrictive means of furthering that compelling governmental interest.

Reading Plaintiff's Motion for Injunctive Relief liberally as the Court must and considering the September 1, 2008, Attachment #2 to the West Virginia Division of Corrections' June 13, 2008, Operational Procedure #5.08, the undersigned finds that Plaintiff cannot prove that the Division of Corrections' and MOCC's policies have substantially burdened his religious activities. Rather, by their policies as set forth in Attachment #2, the Division of Corrections and MOCC recognize that Native American religious ceremonies include smoking and have allowed it notwithstanding their general ban on smoking. Clearly, Plaintiff may participate in ritualistic smoking during Native American religious ceremonies at MOCC. In alleging that his activities are substantially burdened in this regard, his claim has no factual basis and is therefore frivolous. There is no indication that Plaintiff has been or will be substantially harmed. Plaintiff's mere insinuation that the Division of Corrections and MOCC do not accommodate dietary and pharmaceutical restrictions of his Native American religion and hold religious services as frequently as he would like does not suffice to state a claim which the Court might find cognizable. The focus of Plaintiff's Motion for Injunction is upon the Division of Corrections' and MOCC's policies respecting smoking as they impact his religious activities, and in this regard, he can have no relief under RLUIPA.

  **B.**   **Plaintiff's Constitutional Claim.**

Inmates clearly retain certain constitutional protections notwithstanding their convictions and confinement in prison. Hudson v. Palmer, 468 U.S. 517, 104 S.Ct. 3194, 3198, 82 L.Ed.2d 393 (1984); Bell v. Wolfish, 441 U.S. 520, 545, 99 S.Ct. 1861, 1877, 60 L.Ed.2d 447 (1979). "[F]ederal courts must take cognizance of the valid constitutional claims of prison inmates." Turner v. Safley, 482 U.S. 78, 84, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64 (1987). Generally speaking, to prevail upon a claim under 42 U.S.C. § 1983, a Plaintiff must prove that (1) a person acting under color of State law (2) committed an act which deprived him of an alleged right, privilege, or immunity protected by the Constitution or laws of the United States.

Of the rights retained by inmates upon incarceration is the right to practice their religion while in prison. See O'Lone, v. Estate of Shadbazz, 482 U.S. 342, 348, 107 S.Ct. 2400, 2404, 96 L.Ed.2d 282 (1987). The First Amendment of the United States Constitution provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or of the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." The First Amendment applies to the State governments through the Fourteenth Amendment. See Board of Educ. of Kiryas Joel Vill. Sch. Dist. v. Grumet, 512 U.S. 687, 690, 114 S.Ct. 2481, 2484, 129 L.Ed.2d 546 (1994). Under the Free Exercise Clause, States are prohibited from enacting laws "designed to suppress religious beliefs or practices." Hines v. South Carolina Dept. of Corrs., 148 F.3d 353, 357 (4th Cir. 1998). The United States Supreme Court has formulated two analyses to determine whether a State law violates the Free Exercise Clause of the First Amendment. First, if the law proscribes or prohibits conduct irrespective of religious and secular views, the law is considered neutral and therefore, does not violate the Free Exercise Clause. See Booth v. Maryland, 3275 F.3d 377, 380 (4th Cir. 2003)(citing, Employment Div., Dept. of Human Res. v. Smith, 494 U.S. 872, 876-79, 110 S.Ct. 1595, 1598-1600,

108 L.Ed.2d 876 (1990)). Second, if the law is reasonably related to legitimate penological interest, then the law is valid and does not violate the Free Exercise Clause. See O'Lone, 482 U.S. at 349, 107 S.Ct. at 2405. To determine the reasonableness of the law, the Court should consider the follow factors:

> (1) a regulation must have a logical connection to legitimate governmental interest invoked to justify it; (2) the inmates should have alternative means of exercising their religious rights; and (3) accommodating the inmates' rights should not severely impact other inmates, prison officials and allocation of prison resources generally.

Hines, 148 F.3d at 358 (citing O'Lone, 482 U.S. at 350-53, 107 S.Ct. at 2400.)

Considering Plaintiff's claims under the Free Exercise Clause of the First Amendment, the undersigned finds that the facts as found in Plaintiff's allegations and gathered from the record do not indicate that Plaintiff's rights under the First Amendment have been or likely will be violated. Rather, it appears clear that in consideration of Native American religious beliefs, the Division of Corrections and MOCC have made an exception to their general smoking ban to accommodate those beliefs by allowing ritualistic smoking of a mixture or blend of substances including tobacco during religious ceremonies. Their control of and restrictions upon the possession and use of the substances including tobacco is reasonably related to their legitimate penological interest in eliminating any possibility that inmates might obtain them as they are contraband outside of their use during religious ceremonies. Accordingly, the undersigned concludes that the facts do not indicate any violation of Plaintiff's First Amendment right. Injunctive relief is not appropriate.

## **PROPOSAL AND RECOMMENDATION**

Based upon the foregoing, it is therefore respectfully **PROPOSED** that the District Court confirm and accept the foregoing factual findings and legal analysis and **RECOMMENDED** that the District Court **DENY** Plaintiff's Motion for Injunctive Relief (Document No. 1.), **DISMISS** this action

and **REMOVE** it from the Court's docket.

Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is **FILED**, and a copy will be submitted to the Honorable United States Chief District Judge Joseph R. Goodwin. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(e) and 72(b), Federal Rules of Civil Procedure, Plaintiff shall have thirteen days (ten days, filing of objections and three days, mailing/service) from the date of filing of this Proposed Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155, 106 S.Ct. 466, 475, 88 L.Ed.2d 435 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984). Copies of such objections shall be served on opposing parties, Chief District Judge Goodwin, and this Magistrate Judge.

The Clerk of this Court is directed to file this Proposed Findings and Recommendation and mail a copy to Plaintiff, who is acting *pro se*.

Date: November 18, 2008.

R. Clarke VanDervort
United States Magistrate Judge