IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

JAMES BAILEY,

                Plaintiff,

v.                                           CIVIL ACTION NO. 2:08-cv-01204

J. RUBENSTEIN, et al.,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the court is the plaintiff's Motion for Injective [sic] Relief [Docket 1] and the plaintiff's Motion for a Status Report [Docket 5]. Pursuant to 28 U.S.C. § 636(b)(1)(B) and a Standing Order, this matter and the Motion for Injunctive Relief were referred to the Honorable Mary E. Stanley, United States Magistrate Judge, for proposed findings of fact and recommendations for disposition. On November 18, 2008, the Magistrate Judge submitted proposed findings and made various recommendations. On November 24, 2008, the plaintiff, James Bailey, sent to this court copies of his objections to the proposed findings and recommendations ("PF&R"). Due to a clerical oversight, however, those objections were not placed on the court's docket at that time. The Clerk is **DIRECTED** to docket the plaintiff's objections, which accompany this Order, and to modify the docket text to reflect that it was received on November 26, 2008 and thus was timely filed.

This court has reviewed *de novo* those portions of the PF&R to which Mr. Bailey objected. *See* 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those

portions of the report or specified proposed findings or recommendations to which objections is being made."). For the reasons set forth below, the court **ADOPTS** the Magistrate Judge's proposed findings, Mr. Bailey's Motion for Injunctive Relief is **DENIED**, and his Motion for a Status Report is **DENIED as moot**.

## I.    Mr. Bailey's Motion

In this case, James Bailey filed a Motion for Injunctive Relief against James Rubenstein, the Commissioner of the West Virginia Division of Corrections. Mr. Bailey is an inmate at Mount Olive Correctional Complex ("MOCC"). In his motion, Mr. Bailey argues that policies of the West Virginia Division of Corrections ("WVDOC") and MOCC prevent him from exercising his constitutional right to practice his individualized Native American religion while incarcerated. (Mot. Inj. Relief 1 [Docket 1].) Specifically, Mr. Bailey explains that "traditional native American religious practice includes the ritualistic burning and smoking of tobacco" and that the WVDOC's ban on inmate smoking substantially burdens his ability to practice his religion.[1] (*Id.* at 2, 5).

Though Mr. Bailey explicitly challenges the WVDOC's ban on smoking, which went into effect on March 1, 2008, another regulation implicated by his claim is the MOCC's Operational Procedure #5.08. Operational Procedure #5.08 provides inmates practicing Native American religions with opportunities for ritualistic smoking. For instance, Operational Procedure #5.08 states that the MOCC chapel "will attempt to provide an opportunity for a Native American Prayer Service

---

[1]    Mr. Bailey also indicates that he is prevented from following the dietary restrictions of his religion and "treat[ing] his medical condition with natural remedies . . . [rather than] pharmaceutical medications." (Mot. Inj. Relief 2.) He does not, however, identify any specific WVDOC or MOCC policies or actions imposing these restrictions and does not seek any specific relief from these restrictions. Accordingly, Mr. Bailey has not provided a factual basis for his claims based on dietary and medical treatment restrictions and this court cannot provide relief for those claims.

once a week." (*Id.*, Doc. 1 ¶ D.1.) That regulation also provides that "[a]n attempt will be made to schedule an opportunity for each participant to utilize a red willow bark and tobacco mixture at least once a month." (*Id.*, Doc. 1 ¶ D.4.)

Mr. Bailey asserts that the smoking opportunities provided by Operational Procedure #5.08 are not sufficient because prayer services are only held once a month and that he and other inmates attending those services are subject to harassment, strip searches, and other interference by prison guards. (*Id.* at 5.) Mr. Bailey's motion thus presents a multi-tiered challenge to the prison regulations. In summary, Mr. Bailey argues that the prison regulations substantially burden his First Amendment right to practice his religion because (1) the WVDOC smoking ban prevents him from engaging in ritualistic smoking, and (2) Operational Procedure #5.08 does not provide adequate opportunities for ritualistic smoking.

Based on these allegations, Mr. Bailey asserts claims pursuant to 42 U.S.C. § 1983 and also the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc–2000cc-5. (*Id.* at 1.) Mr. Bailey specifically requests relief through the reversal of "the Commissioner's decision to take tobacco out of the . . . Jails which has made a burden on the Native American Indians Religion." (*Id.* at 5.) Mr. Bailey does not, however, request reformation of Operational Procedure #5.08.

## II.    Proposed Findings and Recommendations

Upon reviewing Mr. Bailey's claim, Magistrate Judge Stanley found that both Mr. Bailey's RLUIPA and the constitutional claims are meritless. First, the Magistrate Judge found that Mr. Bailey's RLUIPA claim was frivolous because it had no factual basis. (PF&R 6.) Specifically, Magistrate Judge Stanley found that WVDOC policies do not substantially burden Mr. Bailey's

religious activities because Operational Procedure #5.08 allows Mr. Bailey to smoke tobacco in religious ceremonies despite the generally applicable tobacco ban. (*Id.*)  Accordingly, Mr. Bailey had provided no evidence that he had been substantially harmed by the policies. (*Id.*)

Second, Magistrate Judge Stanley found that Mr. Bailey's constitutional claim also had no factual basis because the MOCC's Operational Procedure #5.08 provides Mr. Bailey with an opportunity to smoke in conjunction with religious ceremonies despite the WVDOC's smoking ban. (*Id.* at 8).  Therefore, Mr. Bailey had not shown that his First Amendment rights have been or likely would be violated. (*Id.*)  Further, Magistrate Judge Stanley found that the WVDOC and MOCC policies did not facially violate the First Amendment because they were "reasonably related to [its] penological interest in eliminating any possibility that inmates might obtain them as they are contraband outside their use during religious ceremonies." (*Id.* at 8.)  In light of these findings, Magistrate Judge Stanley recommended that I deny Mr. Bailey's motion and dismiss this action.

### III.   Analysis Mr. Bailey's Objections

Mr. Bailey's objections to Magistrate Judge Stanley's report fall into two categories.  First, Mr. Bailey objects to Magistrate Judge Stanley's analysis of his constitutional claim on the grounds that she did not consider the absence of alternatives for Mr. Bailey and other inmates to practice their religions as required by the United States Supreme Court's decision in *Turner v. Safely*, 482 U.S. 78 (1987).[2]  Second, Mr. Bailey objects to the application of Operational Procedure #5.08 to

---

[2]      Mr. Bailey does not expressly limit his objections to Magistrate Judge Stanley's analysis of the constitutional claim.  His only articulated objection, however, involves Magistrate Judge Stanley's failure to consider one of the *Turner* factors, which is a consideration applicable only to constitutional claims.  Further, Mr. Bailey discusses the RUILPA in his objections, but his discussion is limited to an explanation of the statute and its general application. (*See* Objections 2, 4.)  He does not discuss the specific application of the RUILPA to his case or reference Magistrate (continued...)

the extent that prayer services are only held once a month, rather than once a week, and that inmates attending such services are burdened by harassment and interference by guards.

As a preliminary matter, I note that although I must review *de novo* those portions of the Magistrate Judge's report to which the plaintiff objects, I may review the remaining portions of the report for clear error. *See Camby v. Davis,* 718 F.2d 198, 200 (4th Cir. 1983); *Campbell v. United States D. Ct. N.D. Cal.,* 501 F.2d 196, 206 (9th Cir. 1974). Mr. Bailey did not object to Magistrate Judge Stanley's RLUIPA analysis. I **FIND** that Magistrate Judge Stanley's determination that the RLUIPA claim was frivolous was not clearly erroneous and therefore, I **ADOPT** Magistrate Judge Stanley's finding with respect to that claim.

### A.    Mr. Bailey's Constitutional Claim

Mr. Bailey objects to Magistrate Judge Stanley's findings with respect to the constitutional claim and therefore I will review her analysis of that claim *de novo*.[3] Because Mr. Bailey is seeking an injunction, the analysis of his constitutional claim occurs within the context of determining the propriety of issuing the requested injunction. To determine whether an injunction is appropriate, I must conduct a hardship balancing test established by the Fourth Circuit Court of Appeals' opinion in *Blackwelder Furniture Company of Statesville, Inc. v. Seilig Manufacturing Company, Inc.*, 550 F.2d 189 (4th Cir. 1977). That balancing test requires me to consider four factors:

———————————————

[2](...continued)
Judge Stanley's analysis of his RUILPA claim. Accordingly, I cannot discern any objections to Magistrate Judge Stanley's findings with respect to that claim.

[3]    I note that "the First Amendment affords less protection to inmates' free exercise rights than does RLUIPA." *Lovelace v. Lee*, 472 F.3d 174, 200 (4th Cir. 2006). Consequently, Magistrate Judge Stanley's uncontested finding that the RLUIPA claim was frivolous suggests that Mr. Bailey's constitutional claim will also have little merit.

(1) the likelihood of irreparable harm to the plaintiff if the preliminary injunction is denied,

(2) the likelihood of harm to the defendant if the requested relief is granted,

(3) the likelihood that the plaintiff will succeed on the merits, and

(4) the public interest.

*Manning v. Hunt*, 119 F.3d 254, 263 (4th Cir. 1997) (quoting *Direx Israel, Ltd. v. Breakthrough Medical Corp.*, 952 F.2d 802, 812 (4th Cir. 1991)). Ordinarily, the first two factors are the most important in the a court's hardships analysis. *Id.* In this case, however, the irreparable harm to Mr. Bailey "turns on establishing a likelihood of success on the merits of [his] Establishment Clause claim." *Person v. Mayor & City Council of Baltimore*, 437 F. Supp. 2d 476, 480 (D. Md. 2006). This is because Mr. Bailey alleges that the WVDOC and MOCC regulations deprive him of his First Amendment rights, and "[t]he loss of First Amendment freedoms, for even a minimal period of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Accordingly, if Mr. Bailey successfully shows that the regulations do deprive him of his rights, then he will also have demonstrated his irreparable injury. Therefore, my inquiry will focus on whether Mr. Bailey has established a likelihood of success on the merits of his case, that is, whether he has shown that the prison regulations unconstitutionally infringe on his constitutional right as an inmate to practice his religion.

"A prison regulation that abridges inmates' constitutional rights is 'valid if it is reasonably related to legitimate penological interests." *Lovelace*, 472 F. 3d at 199 (quoting *Turner v. Safely*, 482 U.S. 78, 89 (1987)). In *Turner v. Safely*, the Supreme Court identified four factors that a court should consider in evaluating the reasonableness of a prison regulation restricting an inmate's First Amendment rights. "First, there must be a 'valid, rational connection' between the prison

regulation and the legitimate interest put forward to justify it." *Turner v. Safely*, 482 U.S. 78, 90 (1987) (quoting *Block v. Rutherford*, 486 U.S. 576, 586 (1984)). Second, the court must consider "whether there are alternative means of exercising the right that remain open to prison inmates." *Id.* If other avenues for exercising the right remain available despite the regulations, then the regulation is more likely reasonable. *See Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 131 (1977); *Pell v. Procunier*, 417 U.S. 817, 827-28 (1974). Third, the court must consider "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally." *Turner*, 482 U.S. at 90. Fourth, "the absence of ready alternatives [to the regulation] is evidence of the reasonableness of a prison regulation." *Id.*

Mr. Bailey's objection is based primarily on the second *Turner* factor: the availability of alternative means to practice his religion. Mr. Bailey asserts that the WVDOC regulations do not provide for a sweat lodge or facility to perform purification ceremonies. (Objections 3.) Because Mr. Bailey and the other inmates practicing Native American religions do not have an alternative sweat lodge or ceremonial facility available to them, Mr. Bailey argues the WVDOC regulations are unconstitutional. Mr. Bailey further asserts that he and other inmates were not permitted to smudge at prayer services. (*Id.* at 3.)

The Supreme Court has explained, however, that the First Amendment does not require prison officials to provide inmates with the opportunity to exercise *every* facet of their religions. *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 351-52 (1987). Rather, an inmate's right to exercise his religion is preserved as long as he is not "deprived of all forms of religious exercise . . . ." *Id.* at 352. Accordingly, the relevant question before this court with respect to the second *Turner* factor

-7-

is whether Mr. Bailey and other inmates practicing Native American religions "retained the ability to participate in other [Native American] religious ceremonies." *Id.*; *see Turner*, 482 U.S. at 92 (holding that regulation restricting correspondence between inmates was reasonable because it "does not deprive prisoners of all means of expression . . . [but] with only a limited class of other people with whom prison officials have particular cause to be concerned . . . ."). The policies at issue in this case provide opportunities for the practice the Native American religion, including some practices specifically named by Mr. Bailey. For instance, Mr. Bailey argues that he and other Native Americans were not permitted to smudge at the prayer services, but Operational Procedure #5.08 explicitly provides for such an opportunity: "The Religious Services Department will make provisions for individuals to smudge and pray together." (Pl.'s Mot. Inj. Relief, Doc. 1 at 2.) Because the WVDOC and MOCC policies do not deprive inmates of all opportunities to practice Native American religions, the absence of alternative opportunities to practice specific aspects of that religion does not render the policies unreasonable.

Moreover, as Magistrate Judge Stanley found, the prison regulations restricting tobacco use are reasonably related to a legitimate penological interest. That interest is the prevention of inmates acquiring tobacco, which is contraband, outside of religious ceremonies. As stated in Operational Procedure #5.08:

> MOCC has a compelling governmental interest to control the introduction of contraband, to include tobacco products, into the inmate population. Further, MOCC must consider the costs associated with the use of Staff/officers, space availability, and time factors in the administration of any program, religious or otherwise. With the documented cases of tobacco from the tobacco stored in the Chapel and used in the Native American prayer ceremonies being found in the possession of inmates on the yard and the case of tobacco order missing, this procedure is the least restrictive alternative available instead of banning the use of tobacco all-together.

(Mot. Inj. Relief, Doc. 2 ¶ A.) Because the WVDOC ban on tobacco and the MOCC regulations concerning Native American religious practices are reasonably related to the penological interest, and because the regulation preserves Mr. Bailey's opportunities to practice his Native American religion, Mr. Bailey has not established likely success of his claims on the merits.   Accordingly, I **ADOPT** the findings of Magistrate Judge Stanley, **DENY** Mr. Bailey's Motion for Injective [sic] Relief [Docket 1], and **DISMISS** this action.   Further, because Mr. Bailey's motion has been resolved, I **DENY as moot** his Motion for a Status Report [Docket 5].

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:      April 15, 2009

Joseph R. Goodwin, Chief Judge

-9-